UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANET STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3-06-0537 |
| | ) |
| ADVANCE STORES COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court are cross-motions for summary judgment in this action brought under the Family and Medical Leave Act ("FMLA"). Plaintiff Janet Stevens has filed a Motion for Partial Summary Judgment (Docket Entry No. 15) on the issue of liability. Defendant Advance Stores Company has filed a Motion for Summary Judgment (Docket Entry No. 17) seeking dismissal of Plaintiff's Complaint in its entirety.

## I. FACTS

Plaintiff was employed as a material handler at PDQ 18, Advance's warehouse facility in Gallatin, Tennessee.[1] She began her employment in September 1999 and was terminated on January 13, 2006, allegedly in violation of the FMLA.

During the time period relevant to this lawsuit, Plaintiff's direct supervisor was LeeAnn Calvin ("Calvin"). Calvin Jones ("Jones") was the facility manager. Robert Blaylock ("Blaylock") was the human resources assistant at the facility.

---

[1]The facility closed seven weeks after Plaintiff's termination.

1

Among other things, Jones was responsible for tracking employee attendance. Jones also had the sole authority to hire and fire employees, who were known at the facility as team members.

Three of Defendant's employment policies are at issue in this litigation – its FMLA, sick leave, and attendance policies. The FMLA policy allows eligible employees to receive up to twelve weeks of unpaid leave per calendar year, which is defined as January 1st through December 31st. When a team member takes FMLA leave, the team member must use all accrued sick leave to cover the absence. If a team member does not have enough sick leave to cover the absence, any time remaining for the FMLA-qualifying absence is unpaid. Absences which are covered by the FMLA are not subject to progressive disciplinary action procedures.

Employees who complete at least 90 days of continuous employment with Defendant are eligible for sick leave. Sick leave is earned at the rate of one hour for each week of full-time employment up to a maximum of 52 hours per calendar year.

In addition to the FMLA policy and the sick leave policy, Defendant has an attendance point system called the Attendance Related Point System ("Point System"). Under the Point System, team members accumulate points during a rolling twelve-month period and any such points drop off an employee's record twelve months after receipt.

Pursuant to the Point System, a team member who is absent but who fails to give any notification for the absence accumulates five points for "No Call/No Show." A team member who fails to contact his or her immediate supervisor and/or manager regarding his or her absence at least 30 minutes prior to the start of a scheduled shift receives three points for an "Improper Notification." A team member who is unable to report to work a scheduled shift and who does not have adequate sick leave hours available to cover the entire scheduled shift receives two points for the absence.

A team member who arrives late or leaves early but works at least 75% of a scheduled shift receives one point on his or her attendance record. A team member who is absent but who has enough sick leave hours to cover the absence is not assessed any points.

If a team member accrues four (4) points within a twelve-month period, he or she will receive a "Written Warning." If a team member accrues six (6) points within a twelve-month period, he or she will receive a "Corrective Interview." A team member who accrues eight points within a twelve month period receives a "Final Corrective Interview." Finally, a team member who accrues ten points within a twelve month period is terminated from employment. However, absences which are covered by the Family and Medical Leave Act are not subject to progressive disciplinary action under the Point System.

The events leading up to this litigation show the following attendance record in regard to the Plaintiff. She was absent on January 17, 2006 and February 24, 2006 because she was "sick." However, she received no points for those absences because she had sufficient sick leave hours to cover the absences.

On March 7, 2005, Plaintiff was tardy and received one point. Shortly thereafter, on April 10, 2005, Plaintiff accrued three points because she failed to notify her supervisor before her shift started that she would be absent. The following day Blaylock wrote a "Written Warning" that stated Plaintiff had accrued four points within a twelve-month period. Plaintiff received the "Written Warning" on April 14, 2005.

The following day, April 15, 2005, Plaintiff left work after working only 3.5 hours, which resulted in her being assessed an absence and two points because she did not have enough sick leave

3

to cover the absence. Having received six points in a twelve-month period, Plaintiff received a Written Corrective Interview on April 22, 2005.

On May 21, 2005, Plaintiff received one additional point because she was tardy. She left early on June 27, 2005, July 14, 2005, and August 1, 2005, but did not accrue any points because she had enough sick leave hours to cover the times she was absent.

On August 4, 2005, Plaintiff received two more points because she was absent but did not have enough sick leave hours to cover her absence. Blaylock then drafted a "Final Corrective Interview" memorializing that Plaintiff had accrued more than eight points within a twelve-month period which Plaintiff received on August 8, 2005.

On September 12, 2005, the Advance Employee Benefits Department granted Plaintiff's request for intermittent FMLA leave due to depression. The intermittent leave covered the time period of August 8, 2005, to December 31, 2005 and therefore Plaintiff's absence of September 10, 2005 was excused as FMLA-qualifying. On December 9, 2005, Plaintiff was absent from work, but she had sufficient sick leave hours to cover that absence and therefore she did not accrue any points.

On January 10, 2006, Plaintiff was absent because she was "sick" but again did not accrue any points because she had sufficient sick leave hours to cover the absence. Plaintiff did not visit or call a doctor on January 10, 2006. Instead, she took Tylenol, Robitussin, and throat lozenges for her illness. January 11, 2006 was Plaintiff's scheduled day off. She was still ill and, while she did not visit or call a doctor on that day, she continued to take Tylenol, Robitussin, and throat lozenges for her illness.

On January 12, 2006, Plaintiff went to work and began her scheduled shift. About an hour into the shift, Jones and Calvin sent Plaintiff home, even though Plaintiff wanted to remain at work.

4

Plaintiff was perspiring heavily and left the work floor on more than one occasion in order to throw up. Other employees expressed concerns about having to work around Plaintiff and they were fearful of catching whatever Plaintiff had. Because she was sent home, Plaintiff did not receive any points despite the fact that she did not have enough sick leave hours to cover her absence. She did not visit or call a doctor on January 12, 2006, but continued to take Tylenol, Robitussin, and throat lozenges to treat her illness.

On January 13, 2006, Plaintiff called the facility to report that she would be absent from work because she was sick. Plaintiff accrued two points for missing work that day because she did not have sufficient sick leave hours to cover her absence. This raised her point level to eleven and because of that, Blaylock drafted a "Termination Recap" that same day which indicated that Plaintiff was terminated immediately.

Plaintiff visited her doctor on January 13, 2006, complaining of earache, sore throat, nausea, and coughing. Her doctor released Plaintiff to return to work with no restrictions on January 14, 2006 and required no follow-up appointment. He did, however, prescribe four medications to treat Plaintiff's upper respiratory infection, pharyngitis, rhinitis, and nausea.

Plaintiff returned to the facility on January 14, 2006, a Saturday, and presented her medical excuse and prescriptions. However, she was sent home by the weekend supervisor and instructed to return to work on Monday, January 16, 2006.

Defendant's attendance records indicate that with respect to January 14, 2006, "team member was on medication and could not go into the warehouse. Calvin [Jones] told her to return on Monday." (Jones Depo. Ex. 9). Those records also indicate that on January 15, 2006, Plaintiff was

5

absent due to illness. The reports for January 12 through 15 all indicate that Plaintiff was absent due to illness.

On January 16, 2006, Plaintiff reported for work and received and signed the Termination Recap. Jones was the person responsible for making the termination decision in regard to Plaintiff. At the time of the decision, Jones had not received any training under the FMLA.

## II. Standard of Review

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 (c) ; Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence

6

in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

The FMLA entitles an eligible employee up to twelve-weeks of leave during any twelve month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)©. "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." Hoge v. Honda of Am., Inc., 384 F.3d 238, 244 (6th Cir. 2004).

"The interference provision of the Act, § 2615(a)(1), creates prescriptive rights" by providing "that 'it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Id. (quoting 29 U.S.C. § 2615(a)(1)). It is not necessary that Plaintiff was treated any worse than other employees, only that she was denied an entitlement under the Act. Id.[2] To prevail on an interference claim, a plaintiff must establish that (1) she is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the Act, 29 U.S.C.

---

[2]For this reason, "[a]n employer may violate § 2615(a)(1) regardless of the intent of [its] conduct." Id.

7

§ 2612(a)(1); (4) the employee gave the employer notice of her intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee benefits to which she was entitled. Saroli v. Automation Modular Components, Inc., 405 F.3d 446, 454 (6th Cir. 2005).

The retaliation or discrimination theory prohibits employers from discriminating against employees who have used FMLA leave and from using FMLA leave as a negative factor in employment actions. 29 C.F.R. § 824.220©. "This prohibition includes retaliatory discharge for taking leave." Arban v. West Publ'g Co., 345 F.3d 390, 403 (6th Cir. 2003). Where there is no direct evidence a Court is to utilize the McDonnell Douglas burden-shifting framework . Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001). "To survive summary judgment, [Plaintiff] must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge." Heady v. U.S. Enrichment Corp., 2005 WL 1950793 (6th Cir. 2005).

The critical issue in this case relates to Plaintiff's absences in January 2006. Plaintiff claims that these were FMLA protected and Defendant both interfered with her right to take FMLA leave and retaliated against her for using FMLA leave in relation to her absences in January 2006. Defendant asserts that Plaintiff's absences in January were not FMLA-qualified and, in any event, Plaintiff did not properly notify it of her need for FMLA leave in January 2006.

Upon review of the submissions by the parties, the Court concludes that there are at least two genuine issues of material fact which preclude summary judgment for either party. Those issues are whether Plaintiff satisfied the notice requirement and whether she had a serious health condition within the meaning of the FMLA.

8

Case 3:06-cv-00537    Document 32    Filed 04/17/07    Page 8 of 14 PageID #: 947

A. **Notice Under the FMLA**

In Walton v. Ford Motor Co., 424 F.3d 481 (6th Cir. 2005), the Sixth Circuit reviewed the FMLA's notice requirement, writing:

> "[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Id. (internal quotation marks omitted). While an "employee need not expressly assert rights under the FMLA or even mention the FMLA," 29 C.F.R. § 825.303(b), the employee must give "the employer enough information for the employer to reasonably conclude that an event described in FMLA § [2612(a)(1)(D) ] has occurred." Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999). "[W]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." Cavin [v. Honda of America Mfg. Inc., 346 F.3d 713, 724 (6th Cir. 2003)].

Id. at 486.

As Defendant correctly notes, the critical question in determining whether proper notice has been given is whether the information imparted to the employer is sufficient to apprise it of the employee's request to take time off for a serious health condition. Defendant argues that a Plaintiff's statement that she was "sick," or had a cold, or that she was going to visit a doctor is insufficient as a matter of law.

While that may be true as a legal matter, it ignores evidence which Plaintiff has forwarded which would suggest that Defendant was adequately apprised that Plaintiff may have had something more serious than a cold and something which constituted a serious health condition under the FMLA. Viewed in a light most favorable to the Plaintiff, the record shows that on January 12, 2006, Plaintiff was sent home after she was "observed as being ill." According to Defendant's own record, Plaintiff was perspiring heavily and left the floor to throw up, prompting other team members to

9

express concern about having to work around Plaintiff. On January 13, 2006, Plaintiff visited her doctor who prescribed medicine. On January 14, 2006, Plaintiff reported for work but was sent home that day and marked absent due to illness. Defendant's own records show Plaintiff was ill for four consecutive days – January 12, 13, 14, and 15, 2006. These records, when viewed in a light most favorable to Plaintiff could lead a reasonable jury to conclude Defendant was aware of her need for leave.

True, Plaintiff never said in January 2006 that she needed a leave of absence. However, "[j]ust as an employee can give an employer notice of h[er] request for FMLA-qualifying leave without invoking the FMLA, . . . an employee can give notice sufficient to make h[er] employer aware that [s]he needs FMLA-qualifying leave without using the words 'leave' or 'leave of absence.'" Cavin, 346 F.3d at 725. Further, if an employer lacks sufficient information about the reason for an employee taking leave, it is incumbent upon the employer to ascertain whether the leave is potentially FMLA-qualifying. Cavin, 346 F.3d at 725; 29 C.F.R. § 825.303(b).

In reaching the conclusion that a question of fact exists as to whether Plaintiff provided sufficient notice, the Court recognizes Defendant's argument that the notations made in Plaintiff's record about her being absent due to illness on January 14, 15, & 16, 2006 are irrelevant because the decision to terminate her employment pursuant to the "Point System" was made by Jones on January 13, 2006. However, even if true, "[t]he regulations clearly provide that 'employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies[.]'" Cavin, 346 F.3d at 726 quoting, 29 C.F.R. § 825.220©. "Thus, 'a termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still

10

violate the FMLA.' Id., quoting, Barnett v. Revere Smelting & Refining Corp., 67 F.Supp.2d 378, 388 (S.D.N.Y.1999). That is precisely Plaintiff's claim in this case and, based on the evidence in the summary judgment record, a jury could in fact find that Plaintiff was terminated based in part on an absence covered by the FMLA.[3]

## B. Serious Health Condition

As defined in the FMLA, "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C.§ 2611(11) Under the regulations, "continuing treatment by a health care provider" includes "[t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(2)(i)(B). A "regimen of continuing treatment" includes a "course of prescription medication." 29 C.F.R. § 825.114(b).

Whether an individual has a "serious health condition" within the meaning of the FMLA is "one of those ubiquitous mixed questions of fact and law" which the factfinder is to determine under an objective test. Thorson v. Gemini, Inc., 205 F.3d 370, 377 (8th Cir. 2000). "Once the factfinder has affirmatively found the necessary facts, the conclusion that a plaintiff has a 'serious health condition' is inescapable as a matter of law." Id. If there are no genuine issues as to the facts relating to the health condition, then summary judgment is appropriate. Id.

---

[3]This same rationale would apply to Defendant's contention in its Motion for Summary Judgment that Plaintiff cannot prevail on her FMLA retaliation claim because she cannot show a causal connection between her taking of FMLA leave and her termination, nor can she show that the stated reason for dismissal (the accumulation of too many points under the Point System) was pretextual. Plaintiff can establish both a causal connection and pretext by showing that she was "pointed out" on January 13, 2006 due to an absence that qualified for protection under the FMLA.

11

In this case, a jury could view the facts as showing that Plaintiff did not suffer from a serious medical condition within the meaning of the FMLA. As Defendant correctly observes, illnesses such as the common cold and flu do not constitute a serious health condition. See, 29 C.F.R. § 824.114©. Further, Plaintiff's own doctor gave her a release which indicated she could return to work on January 14, 2006, with no restrictions and the only reason she did not actually work that day was because Jones (who allegedly had made the decision to terminate her on January 13, 2006) wanted to inform her of the termination personally.

However, a jury could also find from the evidence presented in this record that Plaintiff did in fact suffer from a serious medical condition in January 2006. While a cold or flu is not in itself a serious medical condition under the FMLA, such conditions can be "serious" if "complications arise[.]" Id. Moreover, the statute itself designates a serious health condition as one lasting three or more days involving "continuing treatment," which the regulations define as including a course in prescription medications.

Plaintiff was treated by her healthcare provider and diagnosed as having an acute upper respiratory infection, pharyngitis, allergic rhinitis, and nausea with vomiting. For these ailments, her physician prescribed Augmentin, Viscous Lidocaine, Zyrtec D, and Phenergen. This evidence could be viewed as supporting claims that she was on a treatment regimen by her physician within the meaning of the regulation.[4]

---

[4] In this regard, Defendant's reliance on the Sixth Circuit's unpublished decision in Nawrocki v. United Methodist Retirement Comm., 174 Fed. Appx. 334 (6th Cir. 2006) for the proposition that receipt of prescriptions is insufficient to prove a serious health condition is misplaced. In that case, unlike here, at the time the employer made its termination decision it had received a negative certification from the employee's doctor. The employer was entitled to rely on the certification in concluding that the absences at issue were not FMLA-qualifying.

12

A jury could also find that Plaintiff was ill for more than three consecutive days. In her deposition, Plaintiff testified she woke up ill with a fever on January 10, 2006 and called in sick. She spent the day sleeping on and off and medicated herself with over-the-counter medicines. Plaintiff also testified in her deposition that on January 11, 2006, Plaintiff's normal day off, she was still sick and continued to take non-prescription medicine. The following day, though still ill, Plaintiff attempted to work. She claims she was running a high fever and had uncontrollable vomiting. Plaintiff was sick enough that Defendant decided to send her home. Upon returning home Plaintiff went to bed.

The following day, January 13, 2006, Plaintiff visited her doctor, was diagnosed with four different ailments, and prescribed four medications. She did not work that day and Defendant's records indicate that she was out due to illness. Defendant's records indicate that on January 14, 2006, Plaintiff "was on medication and could not go out into warehouse."[5] (Jones Depo. Ex. 9). She was again marked absent due to illness. Finally, on January 15, 2006, Plaintiff's attendance report indicates that she was again absent due to illness. Clearly this evidence, when viewed in a light most favorable to Plaintiff could lead a reasonable jury to conclude that Plaintiff was ill for more than three consecutive days as required by the FMLA.

## IV. **CONCLUSION**

Genuine issues of material fact exist as to whether Plaintiff adequately notified Defendant of her need to take FMLA leave in January 2006 and whether she was in fact suffering from a

---

[5]The comment section also states that "Calvin [Jones] told her to return on Monday." While Defendant argues that was the real reason Plaintiff was sent home, a jury could view the attendance records as indicating Defendant's understanding that Plaintiff was ill on both January 14 and 15, 2006 and she therefore was not permitted to work due to illness.

13

"serious health condition" during this period. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 15) and Defendants' Motion for Summary Judgment (Docket Entry No. 17) will be denied.

      An appropriate Order will be entered.

                                              ROBERT L. ECHOLS
                                              UNITED STATES DISTRICT JUDGE